## CLEMENT T., ELEANOR B. M. AND ANN T. HILLEARY *vs.* THOMAS J. HURDLE.—*December*, 1847.

A guardian executed a conveyance of negroes, by way of indemnity, to a security in his bond, which security bequeathed them to the wards, according to their respective shares and interests in a legacy made to them by their grandmother, and as a full equivalent for the money they were entitled to receive from her. Upon a bill to compel the guardian to account, and for a partition of the negroes, the complainants were held bound to prove the number of wards among whom the property was to be divided, or interested in the legacy.

The testator who held the negroes by way of indemnity had no title to them, unless he was damnified by reason of his suretyship.

But the wards might claim the benefit of this collateral security, and ask a sale of the negroes, in order to pay any sum of money which it was ascertained the testator, as a security on that bond, was answerable for.

Such collateral securities are trusts created for the better security of the debt, and it is the duty of courts to see that they fulfil their design.

Securities in a guardian's bond, other than the one indemnified, have an interest in such collateral securities until their liabilities are terminated, and should be consulted, and agree to any other application of the mortgage property than that contemplated by the mortgage. A partition of the negroes among the wards might deprive them of their interest in the indemnity.

If partition was made, the negroes might be recovered at law.

A complainant is not confined to the specific relief asked for in his bill—but he cannot obtain relief in opposition to its allegations.

A party cannot in his bill claim of his guardian, and at final hearing insist that the answers of other defendants entitle him to abandon the claim against the guardian, and prefer the same claim against co-legatees. To do this, he must amend his bill.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 20th November, 1840, by the appellee, who claimed as husband of *Elizabeth Hilleary*, now deceased, leaving an infant child, *Elizabeth Hurdle;* and also under the will of *Eleanor Mulliken*, the grandmother of all the defendants, except *Clement T.*, and also of *Mary Hurdle*. The claim consisted of certain slaves, which came to the hands of *Clement T.* as the guardian of his daughter, *Elizabeth Hurdle*, and to investigate an alleged partition by *Clement T.* among his children. *Prayer* for discovery

14    v.6

account—delivery up of the slaves—for injunction, and general relief.

The will of *Eleanor Mulliken,* devised as follows:

"I give and bequeath unto my daughter, *Henrietta B. Mulliken,* her heirs and assigns, £100, current money; and after the above legacy is taken out of my estate, and my debts and funeral charges are paid, I give and bequeath to my daughter, *Mary Hilleary,* the wife of *Clement T. Hilleary,* one equal share of the residue of my estate, with my other children, *James Mulliken, William Beans Mulliken, John Beans Mulliken,* and my daughter, *Henrietta Beans Mulliken,* the said share or portion to be in current money, of *Maryland;* and under this express proviso, nevertheless: and it, is hereby declared to be my intention, that my executor shall not be compelled to pay into the hands of the said *Clement Trueman Hilleary* any thing herein bequeathed unto my said daughter, *Mary Hilleary;* but that the same shall remain and continue in the hands of my executor, his executor, or such person or persons as he shall appoint, during the life-time of the said *Clement Trueman Hilleary;*—and in case the said *Clement Trueman Hilleary* should die before my said daughter, *Mary Hilleary,* then I give her an absolute estate in the said share or portion. But if my said daughter, *Mary Hilleary,* should die before her said husband, *Clement Trueman Hilleary,* then my will and desire is—and I hereby give and bequeath the said equal share or portion to her children, to be equally divided among them; and that during the life of the said *C. T. H.* the profits thereof shall be paid to my said daughter, *Mary Hilleary;* and that any receipts or writing, witnessing the payments of such profits to my said daughter, *Mary Hilleary,* and signed by her though covert, shall be sufficient discharges to my executor, or person or persons by him appointed as aforesaid."

The bill also alleged that in 1805, *C. T. H.* intermarried with *Mary Mulliken,* daughter of *E. M.,* lately deceased; that he had by *M. M.* the following children, viz: *Anne, Eleanor, William, Sarah, Mary* and *Henrietta Hilleary,* (which two last

named died in infancy, unmarried and intestate,) and *Elizabeth Hilleary*, wife of the complainant, who is since dead, left one child, *Elizabeth Hurdle*, now an infant; that *Mary H.*, the wife of *Clement T.*, died before the year 1821; that *C. T.* intermarried then with *Henrietta*, sister of his first wife; that *E. M.* devised to *Mary H.* an equal share of her estate, being the one-fifth part thereof, upon condition, hereinbefore set forth in the extract of her said will; that *C. T. H.* was appointed guardian to his said children, and as guardian, obtained possession of one-fifth of the estate of the said mother of his children, amounting to $1,600—all which, together with the profits thereof, he has continually applied to his own individual use and benefit; that *Tilghman Hilleary*, father of *C. T. H.* became one of his sureties on his guardian bonds for his children,—and for his indemnity as surety, obtained from the said *C. T. H.* a conveyance for certain negroes : and afterwards, by his will, directed his executor to transfer the said slaves and their issue, to the children of his son, *C. T. H.*, according to their several shares in said legacies, as a full equivalent for the money they were entitled to receive under the will of *Eleanor Mulliken ;* and that shortly after the death of *T. H.*, the said slaves, with their increase, came to the possession of and have since remained in the possession of the said *C. T. H.* and his children. The other portions of the bill are not deemed material to be inserted.

The will of *Tilghman Hilleary*, and receipt of *C. T. H.* as guardian of his three daughters, *Eleanor, Ann* and *Elizabeth*, for a part of the distributive share of the personal estate of the late of *Mrs. Henrietta B. Hilleary*, dated 13th March, 1827, were also filed with the bill.

The answers of the defendants were also filed, and a great variety of proof taken; all which, as far as necessary, are referred to in the opinion of this court.

On the 19th Dec. 1842, the Chancellor (BLAND) decreed a partition to be made of the negroes into three several parts— one to the complainant, in right of his wife; one to *Ann T. Hilleary ;* and the third to *Eleanor B. Hilleary*, according to

their title under *Henrietta B. Hilleary;* and also referred the cause to the auditor to carry the decree into effect—and state the necessary accounts, with liberty to take further proof.

Further proof was taken; as also exceptions to the proof and pleadings. The auditor reported a partition, which was ratified on the 16th July, 1845.

The defendants appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By C. C. MAGRUDER and TUCK for the appellant, and

By T. S. ALEXANDER and PRATT for the appellees.

MAGRUDER, J., delivered the opinion of this court.

The complainant in the bill before us, married the daughter of the defendant, *C. T. Hilleary,* who was duly appointed her guardian. The object of the bill is to compel the guardian to account for the estate of the complainant's wife, and for a partition of property, which, it is alleged, the latter (who was dead at the time of filing the bill,) held with her two sisters, and *Eleanor Hilleary,* who are also made defendants. The property claimed, consisted, in part, of a bequest by *Mrs. Mulliken* to her daughter, (who was the mother of *Mrs. Hurdle* and of the defendants, *Eleanor* and *Anne,*) and after her death to her children.

*Tilghman Hilleary,* the father of the defendant, *Clement,* became security in the bond executed by the latter, as the guardian of his children. A number of negroes were conveyed to this security by said guardian, to save him harmless as a security in that bond, and it appears that the security, *T. H.,* bequeathed those negroes, as to the children of *Clement,* according to their respective shares and interests in the legacy aforesaid, and as a full equivalent for the money, which they were entitled to receive from their said grandmother; of these negroes, the complainant claims in this suit *one-third.*

No proof or admission in the case entitles the complainant

to claim one-third of them. The bill itself does not allege that the mother of the complainant's wife left, at her death, but three children. It admits, that there were two others, *Mary* and *Henrietta*, "who have since departed this life in infancy, unmarried and intestate and without any issue." In the answer also it is stated, that there were five children. Of this latter allegation it is said, that there is no satisfactory proof in the record ; but, before the complainant can be allowed one-third, there must be proof, or an admission, that there were but three children to claim the legacy.

The claim is to negroes, and by virtue of the bequest of the grandfather. Those negroes, the testator states, and it is admitted, he held only in virtue of the deed of indemnity before alluded to. He, of course, had no title to them, if he was not damnified by reason of his suretyship. They were not his property, to be disposed of as he pleased.

It is true that the wards might claim the benefit of this collateral security, might ask a sale of the negroes, in order to pay any sum of money which it was ascertained that the testator, as a security in that bond, was answerable for. 1*st Equity Cases Abridged, (K.)* 5. *Phillips vs. Thompson, 2nd Johnson's Chan. Reports,* 418. 1*st John's C. Reports,* 129. These collateral securities are trusts, created for the better security of the debt, and it is the duty of the Court to see that they fulfil their design. 1*st John's Cas.* 205.

These negroes, conveyed by *Clement*, were probably answerable for more than the amount of *Mrs. Mulliken's* legacy.

Here there is a deficiency of proof. In regard to the portion of *Mrs. Henrietta B. Hilleary,* (the second wife of the defendant, *Clement,*) which is claimed by the complainant, the proof is not so satisfactory as it ought to be. Before a partition can be made, the number of children of the defendant, *Clement,* by his first wife, which of them, if any, are dead, and when they died, as well as at what periods other persons named in the bill died, who were entitled to the estate of *Henrietta B. Hilleary,* and the amount of her estate ; these facts ought to be ascertained in order to a settlement by the

court of the accounts, and a partition of the property, sought in this bill.

The notion of the complainants seems to be, that the negroes mortgaged by *Clement* to *Tilghman H.* and by the latter bequeathed, as has been stated, are to be received in lieu of the legacy of *Mrs. Mulliken.* The legacy of *Mrs. Mulliken,* it would seem, the complainant is willing to give up, claiming only the negroes mentioned in the will of *Tilghman,* and, in addition thereto, the property derived from *Henrietta B. Mulliken.* But the legacy of the grandmother, and the interest of the complainant's wife and other children in the estate of their stepmother, constitute, so far as we are informed, the amount of their estate, and if the latter was received before the guardianship ceased, then the property, mortgaged by the defendant, *Clement,* to his security, may be made answerable for whatever was due from the guardian to those wards.

A partition is spoken of, and this is used as proof of the abandonment by *Clement* of his equity of redemption. But it seems that there was another security in the guardian's bond, who, it does not appear, has ever been consulted or allowed to give his consent to any arrangement in regard to this property, and until his liability on the guardian's bond is at an end, he has an interest in this collateral security, of which he cannot be deprived, but of which he would be deprived, by a distribution among these children of the negroes conveyed by the deed of indemnity. Besides, if the partition had taken place, the question would then arise, whether so much of the complainant's case was not rather a case at law, than in equity ? The complainant proposes in the argument to abandon a part of his claim, as made by the bill, and to make another case to be found in the answer.

It is true, that the complainant is not confined by the specific relief asked in his bill of complaint, but he cannot obtain relief which is in opposition to his allegations. The objection here is not to the sufficiency of the averments of the bill. He cannot in his bill claim of the guardian, and at final hearing,

insist that the answers of the defendants entitle him to abandon the claim against the guardian, and to prefer that same claim against the co-legatees. These answers, perhaps, disclosed enough to justify the complainant in amending his bill of complaint, if he intended to seek the relief to which the matter set forth in those answers entitle him.

Various other points arise in the case, such as whether the depositions of some of the defendants were admissible for their co-defendants: whether a rehearing ought not to have been granted, and sundry depositions, upon which the motion for a rehearing was grounded, ought not to have been received as a part of the testimony? whether the complainant's wife conveyed to two of the defendants her property? If the deed was executed, was it not obtained by a fraud practised upon her? and if it was not so obtained, was not the deed *in fraudem maritagis?* Some of these are questions which belong to the case, and upon which, at this time, it is deemed inexpedient to express an opinion, as the proof upon which the decision of them depends, may hereafter present a very different case. The Chancellor's decree must be reversed with costs, for reasons already stated, and before any account can be directed, it must be ascertained by proof into how many parts the legacy of *Mrs. Mulliken* and the property of *Mrs. H. B. Hilleary*, are to be divided. As a commission must be obtained by the complainants to supply the defects in his testimony, an opportunity will then be afforded to the defendants of taking the testimony which they deem to be material in making out a portion of their defence.

**DECREE REVERSED, WITH COSTS, AND CAUSE REMANDED.**